**Ex parte Armando C. ACOSTA.**

**No. 69280.**

Court of Criminal Appeals of Texas, En Banc.

July 11, 1984.

Armando C. Acosta, pro se.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is a post conviction application for writ of habeas corpus filed pursuant to Art. 11.07, V.A.C.C.P.

On June 5, 1978, following his plea of guilty, applicant was convicted of the felony offense of possession of marihuana and punishment was assessed by the court at eight years in the Texas Department of Corrections. The trial court suspended applicant's sentence and placed him on probation for a term of eight years. On April 3, 1981, in a petition for revocation, the State alleged that the applicant had violated the conditions of his probation by committing three offenses of misdemeanor marihuana possession. At an evidentiary hearing held on April 28, 1981, at which time applicant was represented by his retained counsel, Juan Martinez Gonzalez, the trial court found the State's allegations to be true, revoked applicant's probation and sentenced him to confinement in the penitentiary for a term of eight years. On direct appeal the order revoking applicant's pro-

bation was affirmed by the Fourth Court of Appeals in *Acosta v. State*, 640 S.W.2d 381 (Tex.App.-San Antonio 1982), no petition for discretionary review.

■ In this application, applicant contends that his attorney was ineffective in that a conflict of interest arose when his attorney represented both applicant and his co-defendant, Benjamin Soto. Petitioner also complains that there was insufficient evidence to support the court's probation revocation order. We need not address applicant's second contention inasmuch as the same issue was raised and addressed by the Fourth Court of Appeals on applicant's direct appeal. See *Acosta*, supra at 386. See also *Ex Parte Moffett*, 542 S.W.2d 184 (Tex.Cr.App.1976).

■ On October 5, 1983, this Court ordered the trial court to hold an evidentiary hearing to allow the applicant to more fully develop his allegations and required the trial court to make detailed findings of fact as to the allegations set forth in the application. On January 26, 1984, the trial court held an evidentiary hearing, entered findings of fact and recommended that the

writ be denied. In its finding, the trial court noted that the affidavit filed by applicant's attorney [1] whereby counsel admitted that he "could not have represented both Mr. Acosta [applicant] and Mr. Soto [his co-defendant] to the best of my interest or theirs" was "a self-serving affidavit." The trial court wrote, "I believe Mr. Gonzalez [applicant's attorney] was even convinced that adequate representation was made of this Defendant, and the Court being of the opinion that he was adequately represented, the Court is going to deny the Application for Writ of Habeas Corpus." [2]

A brief recitation of the facts gleaned from the opinion by the appellate court and the record from the evidentiary hearing is appropriate.

In its second amended petition for revocation filed April 3, 1981, the State alleged appellant had committed three offenses, all possession of marihuana of less than two ounces, during his probationary period.[3]

The court based its revocation order on three offenses all occurring in Karnes County. The record reflects that on No-

---

1. The full text of applicant's counsel's affidavit, filed on April 18, 1983, reads:

"My name is Juan Martinez Gonzalez. I am a licensed attorney in the state of Texas, state bar number 08119400, having my office at 402 S. Jackson, Beeville, Texas 78102. On April 28 and May 1, 1981 I was the attorney for Mr. Armando Acosta at his revocation of probation hearing in Cause No. 4818 in Karnes County, Texas. I was also the attorney for Mr. Benjamin Soto at the same time of the revocation hearing. Both Mr. Acosta and Mr. Soto had been arrested several times for possession of marihuana when Mr. Soto had been the driver of a vehicle on two occasions and Mr. Acosta the passenger in the vehicle. Looking back at the revocation of probation hearing now against Mr. Acosta, where it was alleged in the State's Motion To Revoke Probation that Mr. Acosta had been in possession of marihuana on several occasions, I have come to the conclusion that I could not have defended both Mr. Acosta and Mr. Soto to the best of my interest or theirs on April 28, 1981 and on May 1, 1981." /s/ Juan Martinez Gonzales

2. This Court is not bound by the findings, conclusions or recommendations of the convicting court. *Ex Parte McCormick*, 645 S.W.2d 801, 803 (Tex.Cr.App.1983); *Ex parte Ramirez*, 577

S.W.2d 261, 263 (Tex.Cr.App.1979), and *Ex parte Williams*, 561 S.W.2d 1, 2 n. 1 (Tex.Cr.App.1978).

3. The judgment of revocation in pertinent part recited:

"F. That the said defendant, Armando C. Acosta, during the term of this probation, on or about the 20th day of November, 1980, and prior to the filing of State's petition, in the County of Karnes, State of Texas, did then and there unlawfully knowingly and intentionally possess a usable quantity of marihuana of less than 2 ounces.

G. That the said defendant, Armando C. Acosta, during the term of this probation, on or about the 1st day of March, 1981, and prior to the filing of State's petition, in the County of Karnes, State of Texas, did then and there unlawfully, knowingly and intentionally possess a usable quantity of marihuana of less than 2 ounces.

H. That the said defendant, Armando C. Acosta, during the term of this probation, on or about the 7th day of March, 1981, and prior to the filing of State's petition, in the County of Karnes, State of Texas, did then and there unlawfully, knowingly and intentionally possess a usable quantity of marihuana of less than 2 ounces."

vember 20, 1980, a police officer from the Department of Public Safety stopped an automobile in which applicant was a passenger. After searching applicant, both he and his half-brother, Armando Canales, were charged with possession of marihuana. A search of applicant by police officials on that date revealed a white envelope which contained marihuana.

On March 1, 1981, and March 7, 1981, police officers from Kenedy Police Department and Karnes County Sheriff's Department, respectively, stopped an automobile driven by Benjamin Soto for varied traffic offenses. On those two occasions applicant was a passenger in Soto's automobile. Police officers testified that on March 1, 1981, applicant was seen dumping marihuana outside the passenger window and on March 7, 1981, a Karnes County sheriff's officer observed applicant open his car door and throw away a plastic baggie. Upon stopping the automobile on said date the police officer smelled the odor of burned marihuana on the applicant's clothes and hair and marihuana seeds and marihuana were observed on both sides of the car's floorboard and seats. In addition a baggie of marihuana was found under the applicant's seat.

At the evidentiary hearing on applicant's application for writ of habeas corpus, applicant's attorney testified that he was retained by applicant, Benjamin Soto and Armando Canales.[4] Attorney Gonzalez testified that during pre-trial conferences applicant "did all the talking, giving his version of the facts and I assumed them to be true and correct." Gonzalez testified that it was not until after the State had rested its case at the revocation proceeding that codefendant Soto admitted "that he was guilty of all of these possession cases and not Mr. Acosta." The attorney added that "after the State had presented the evidence it became clear" that he had "a conflict of interest between his two clients, Acosta and Soto."

There is nothing in the record to indicate that trial counsel advised his clients of possible conflicts of interests in their positions. The attorney testified the applicant never objected to the dual representation. He further testified that on a prior occasion the attorney represented both applicant and Soto without objection on charges of public intoxication which were later dismissed. Attorney Gonzalez noted that he continued to represent applicant through the appeal, a hearing on the State's petition to revoke applicant's appeal bond and subsequent appeal of the bond revocation.

Evidence at the hearing revealed that applicant pled not guilty to the November 20 offense and charges were subsequently dismissed on the March 1 and March 7 offenses. Defendant Soto was not charged in the November 20 incident and plead guilty to the March 1 and March 7 offenses.

Attorney Gonzalez testified that he filed a motion to withdraw as counsel on September 29, 1981, prior to an appeal bond hearing because of a conflict of interest which arose concerning the representation of applicant and Soto in an indictment returned against both men which formed the basis of the appeal bond revocation.[5] His motion to withdraw was denied by the trial court.

The attorney testified that he did not put Defendant Soto on the witness stand during the revocation proceedings against applicant because if "he had taken the Fifth Amendment, I probably would have felt that that would hurt Mr. Acosta's case because the Court would have revoked Mr. Acosta's case because he was associating with somebody that had marihuana in their possession or a controlled substance, and I didn't want to take that chance to hurt Mr.

---

4. Armando Canales, the applicant's half-brother, was also charged with possession of marihuana in the November 20, 1980 incident. There is nothing in the record to reflect the disposition of that charge.

5. The motion to withdraw as counsel filed by applicant's attorney was not introduced into evidence at the evidentiary hearing nor did Attorney Gonzalez testify as to the basis of that motion.

Acosta." Attorney Gonzalez further testified that "At the same time, I could not put Mr. Soto on the stand because I didn't want him to incriminate himself, too, because he would volunteer information and admit extraneous drug offenses of himself and Mr. Acosta that would have hurt both of them, so I would have hurt them both, so I felt that was the right thing to do, not to offer any evidence, not to put any evidence on, and it was not in my best interest to represent both of them, but knowing after the fact, I don't think there is any way I could have helped it."

■ The Court of Appeals held that the search incident to the November 20, 1980, arrest was not based on probable cause and that the evidence obtained by searching the applicant should have been suppressed. *Acosta*, supra at 385. The court also noted that while the November 20 violation "fails in proof, we find the remaining evidence sufficient to support the revocation of appellant's probation. We agree with the trial court's finding that violations had occurred on March 1, 1981, and March 7, 1981, and that possession of marihuana by appellant on those two occasions was proved by a preponderance of the evidence." *Id.* at 386. Inasmuch as we do not have the record of the revocation proceeding before us, we are thus bound by the findings of the appellate court on this issue of insufficient evidence to support the revocation of probation order based on the November 20 incident.

We must now look to the representation of both applicant and co-defendant Soto at the revocation hearing concerning the March 1 and March 7 offenses to determine if there was a violation of the right of a criminally accused to "conflict-free representation that the Supreme Court has insisted is inherent in the assistance of counsel for his defense guaranteed by the Sixth Amendment to the Constitution of the United States." See *Ex Parte McCormick*, su-

pra at 802, citing *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed.2d 680 (1942).

■ Mere assertion of conflict of interest does not support a claim of ineffective assistance of counsel. *Ferguson v. State*, 639 S.W.2d 307, 310 (Tex.Cr.App.1982). While an accused who fails to object at trial "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance," *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980), ever since *Glasser*, supra, where there is evidence of counsel's "struggle to serve two masters" that cannot be seriously doubted, *Id.* at 315 U.S. at 75, 62 S.Ct. at 467, it follows that an accused's defense is "impaired." *Cuyler*, supra, 446 U.S. at 349, 100 S.Ct. at 1718. Furthermore, once a conflict of interest is shown actually to have affected adequacy of representation, an accused "need not demonstrate prejudice in order to obtain relief." *Id.* See also, *McCormick*, supra at 806. As stated in *Fergeson v. State*, supra,

"an actual and significant conflict of interest exists where, 'one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing.'" *Id.* at 310, citing *Gonzales v. State*, 605 S.W.2d 278, 282 (Tex.Cr.App.1980). See also *Ex Parte Alaniz*, 583 S.W.2d 380 (Tex.Cr. App.1979).

■ We find that the testimony of Attorney Gonzalez, the attorney's subsequent motion to withdraw upon realizing a conflict of interest, along with the facts surrounding the March 1 and March 7 offenses, reflect that there was an actual conflict of interest which adversely affected applicant's right to effective assistance of counsel.[6]

---

**6.** It should be noted that Attorney Gonzalez breached a legal duty to his clients and violated a professional responsibility by failing to ap-

prise the applicant of the dangers of multiple representation.

"That counsel has a legal duty to refuse employment by clients with conflicting interests

The relief sought is granted. The judgment is set aside and applicant is ordered remanded to the Sheriff of Karnes County to answer the petition for revocation of probation. A copy of this order shall be sent to the Texas Department of Corrections.

It is so ordered.

unless a full and prompt disclosure is made to them is not only well settled but codified in the Texas Code of Professional Responsibility, DR5-105:

'(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

'(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

'(C) In the situation covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and *if each consents to the representation after full disclosure of the possible affect of such representation on the exercise of his independent professional judgment on behalf of each.'*

See also ABA STANDARDS RELATING TO THE DEFENSE FUNCTION, Sec. 3.5." *Gonzales v. State,* 605 S.W.2d 278, 281 (Tex.Cr.App.1980) (Emphasis in the original).